UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAROLINE McHUGH, )<br>)<br>    *Plaintiff*   )<br>)<br>v.                             )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,**  )<br>)<br>    *Defendant*   ) | Civil No. 09-104-B-W |

### *MEMORANDUM DECISION ON MOTION TO SUPPLEMENT RECORD AND REPORT AND RECOMMENDED DECISION*[1]

The plaintiff moves to supplement the record filed in connection with the instant Social Security Disability ("SSD") child's benefit and Supplemental Security Income ("SSI") appeal by adding a two-page work capacity opinion of counselor John William Hunter, LCPC, LADC, dated September 24, 2008.  *See* Plaintiff's Motion To Supplement the Record and To Permit Argument ("Motion To Supplement") (Docket No. 17); Medical Opinion re: Ability To Do Work-Related Activities (Mental) ("Hunter Opinion"), attached thereto.  In addition, she appeals the adverse decision of the commissioner finding her capable of performing work existing in significant numbers in the national economy despite her allegations of disability stemming from an affective disorder, anxiety, and polysubstance abuse disorders.  For the reasons that follow, I deny the Motion To Supplement and recommend that the decision of the commissioner be vacated and the case remanded for further development.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on December 17, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

## I. Motion To Supplement

A district court must base its review of a final decision of the commissioner on evidence presented during the underlying administrative proceeding. *See, e.g., Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). The commissioner bears the burden of compiling and filing a transcript of the record, "including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g); *see also, e.g., Dandeneau v. Heckler*, 607 F. Supp. 583, 584 (D. Me. 1985). However, a claimant contending that the resultant record is incomplete bears the burden of establishing that the evidence allegedly omitted was submitted to the commissioner during administrative proceedings. *See, e.g., Larque v. Barnhart*, No. SA-03-CA-0661 OG(NN), 2004 WL 2397580, at *5-*6 (W.D. Tex. Aug. 27, 2004) (rec. dec., *aff'd* Sept. 30, 2004).

The plaintiff submits evidence in support of her contention that her former counsel did in fact transmit the Hunter Opinion *via* facsimile to the Office of Disability Adjudication and Review ("ODAR") in Portland, Maine, including an affidavit of a paralegal who swears that, at the plaintiff's former counsel's request, she filed the Hunter Opinion with ODAR using the bar code provided by the Social Security Administration, through the number 207-761-3994, which was programmed into the law firm's facsimile machine. *See* Affidavit, attached to Plaintiff's Reply to the Defendant's Response to Motion To Supplement ("Reply") (Docket No. 19), ¶¶ 1, 4-5. She attaches a copy of a facsimile cover sheet indicating that the document transmitted was the Hunter Opinion, that it was sent to the ODAR on September 25, 2008, and that the result of the transmission was, "OK." *See id.* ¶ 7 & Exh. A thereto.

The commissioner disputes that this evidence establishes that the paralegal sent the Hunter Opinion, as opposed to some other document, *via* facsimile to ODAR. *See* Defendant's Surreply to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion To Supplement the

Record ("Surreply") (Docket No. 23) at 1-2.[2] In any event, he argues, the plaintiff's former counsel's conduct in the wake of the alleged transmission establishes that he was aware that the Hunter Opinion had not been made part of the official record before the commissioner. *See id*. at 2-3.

Specifically, he notes, the plaintiff's former counsel (i) filed a pre-hearing brief on September 30, 2008, in which the Hunter Opinion was the only referenced piece of evidence that lacked an exhibit number, (ii) did not object at the outset of the plaintiff's October 7, 2008, hearing to admission of numbered exhibits that omitted the Hunter Opinion, (iii) seemingly read from his own notes, rather than a copy of an official exhibit, when he mentioned the Hunter Opinion at hearing, again without any reference to an exhibit number, and (iv) filed an appeal to the Disability Review Board in which the Hunter Opinion again was the only referenced piece of evidence that lacked an exhibit number. *See* Defendant's Response to Plaintiff's Motion To Supplement the Record ("Response") (Docket No. 18) at 3-4; Surreply at 2-3; Record at 23-24, 67, 69-71, 248-51.

He reasons that, against this backdrop, the plaintiff's former counsel could have been expected to have objected to the omission of the Hunter Opinion from among the numbered exhibits submitted at hearing or otherwise to have shown more concern that it was the only piece of evidence lacking an official exhibit number. *See* Response at 3-4; Surreply at 2-3.

This argument is persuasive. As a general proposition, it is the duty of a litigant, not a court, judge, or fact-finder, to ensure that evidence meant to be tendered has in fact been offered into evidence. *See, e.g., Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("The burden of providing a complete record . . . rests on the claimant."). Regardless of whether the plaintiff's

---

[2] The surreply was filed with permission of court. *See* Report of Conference of Counsel and Order ("Report") (Docket No. 21) at 2.

former counsel's paralegal did or did not transmit the Hunter Opinion *via* facsimile to ODAR on September 25, 2008, it should have been apparent that the opinion had not been made part of the court's official record. The plaintiff's former counsel had an opportunity, and a concomitant duty, to ensure that all documents transmitted to the commissioner had in fact been received and admitted into evidence as official exhibits. He did not do so, and the Hunter Opinion was never made part of the official record. It is not admissible now, for the first time, on appeal. *See, e.g., Mills,* 244 F.3d at 4 ("To weigh the new evidence as *if* it were before the ALJ would be, as one court fairly observed, a very peculiar enterprise, and (to us) one that distorts analysis. The ALJ can hardly be expected to evaluate or account for the evidence that he never saw.") (citation and internal quotation marks omitted) (emphasis in original).

The Motion To Supplement accordingly is **_DENIED_**.

## II. Appeal of Decision

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of an affective disorder, an anxiety disorder, and a polysubstance abuse disorder, Finding 2, Record at 13; that, if she stopped substance abuse, she would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: a limitation to unskilled work, *i.e.*, Specific Vocational Preparation ("SVP") level one or two work as defined in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), and to low-stress work, defined as work requiring only occasional judgment, decision-making, changes in the work setting, supervision, and interaction with co-workers, and no more than occasional, incidental

contact with the public, Finding 6, *id*. at 16; that, if she stopped substance abuse, considering her age (21 on the alleged onset date, defined as a younger individual), education (at least high school), work experience (no past relevant work), and RFC, there would be a significant number of jobs in the national economy that she could perform, Findings 7-11, *id*. at 18; and because she would not be disabled if she stopped substance abuse, her substance abuse disorder was a contributing factor material to the determination of disability, and she, therefore, had not been disabled at any time from her alleged onset date (June 1, 2007) through the date of the decision (November 3, 2008), Finding 12, *id*. at 19. The Decision Review Board declined to disturb the decision, *id*. at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that the claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

## A.  Discussion

The plaintiff contends that the administrative law judge erred in (i) finding that her mental health impairments imposed moderate restrictions but failing to reflect them in his mental RFC assessment, (ii) deeming her fibromyalgia condition non-severe, and (iii) neglecting to address the Hunter Opinion. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 11) at 4-13; Proposed Supplement to the Statement of Errors ("Supplement"), commencing at page 3 of Motion To Supplement.[3] The third point is mooted by my denial of the Motion To Supplement. However, I recommend that the court find, on the basis of the first point of error, that reversal and remand are warranted. For the benefit of the parties on remand, I briefly discuss the second point of error, which I find to be without merit.

### 1.  Failure To Reflect Moderate Limitations

The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 2, a claimant has medically determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a

---

[3] I previously granted the plaintiff's motion to supplement her statement of errors. *See* Report at 2.

so-called Listing (a determination arrived at with the aid of a so-called Psychiatric Review Technique Form ("PRTF"); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (a so-called mental RFC assessment). *See* 20 C.F.R. §§ 404.1520a, 416.920a. At the PRTF stage, the severity of the impairment is assessed on the basis of rating of the degree of limitation in four broad functional areas, among them, concentration, persistence, or pace. *See id*.

This court has indicated that mental RFC findings typically should reflect, and be consistent with, the degree of impairment found by way of use of a PRTF. *See, e.g., Leighton v. Astrue*, No. 07-142-B-W, 2008 WL 2593789, at *4 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008) (agreeing with plaintiff's contention "that the mental limitations included in the residual functional capacity assigned by the administrative law judge do not include the moderate difficulties in maintaining social functioning and concentration, persistence or pace that he found to exist").

In this case, as the plaintiff argues, *see* Statement of Errors at 7-8, the administrative law judge's finding, at the PRTF stage, of a moderate limitation in concentration, persistence, or pace is not reflected in his mental RFC determination. Certain of the RFC limitations – those bearing on the plaintiff's ability to interact with supervisors, co-workers, and the public – reflect limitation in the broad category of social functioning, not that of concentration, persistence, or pace. This court has held that the remaining RFC limitations –  restrictions to unskilled work and to only occasional judgment, decision-making, and changes in the work setting – do not reflect moderate restrictions in the broad category of concentration, persistence, or pace. *See Swift v. Astrue*, Civil No. 08-280-B-W, 2009 WL 902067, at *2 (D. Me. Mar. 31, 2009) (rec. dec., *aff'd* Apr. 21, 2009) (use of occasional judgment); *Leighton*, 2008 WL 2593789, at *1, *4

(following instructions up to the SVP three level, making simple work-related decisions, and adapting to occasional work changes). *See also, e.g., Edwards v. Barnhart*, 383 F. Supp.2d 920, 930 (E.D. Mich. 2005) ("[W]hile finding that Plaintiff has a 'moderate limitation in her ability to concentrate, persist and keep pace,' the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more than simple, routine, unskilled work.' While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE [vocational expert]. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.") (citations omitted) (quoted in *Swift*).[4]

In making his Step 5 finding, the administrative law judge relied on the testimony of a vocational expert present at the plaintiff's hearing that a person with the posited mental RFC could perform the requirements of representative occupations such as motel housekeeper. *See* Record at 18-19. The administrative law judge's failure to convey to the vocational expert the moderate limitations he found in concentration, persistence, or pace undermines his reliance on that expert's testimony to carry the commissioner's Step 5 burden. *See, e.g., Arocho v. Secretary*

---

[4] At oral argument, counsel for the commissioner contended that the administrative law judge's mental RFC determination adequately reflected a moderate limitation in concentration, persistence, or pace, a proposition for which he cited *Conley v. Astrue*, Civil No. 08-202-P-S, 2009 WL 214557 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Feb. 18, 2009). He added that, in any event, in assessing mental RFC, the administrative law judge relied on the expert opinions of non-examining Disability Determination Services ("DDS") consultant Lewis F. Lester, Ph.D., and impartial medical expert James M. Claiborn, Ph.D., who testified at the plaintiff's hearing. He noted that in *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 1609033 (D. Me. June 8, 2009) (rec. dec., *aff'd* July 28, 2009), this court deemed harmless an administrative law judge's failure to reflect, in his mental RFC determination, a moderate restriction in concentration, persistence, or pace "because the administrative law judge adopted the residual functional assessment of a reviewing expert who took into account moderate limitations in the plaintiff's concentration, persistence, or pace." *Arsenault*, 2009 WL 1609033, at *3. *Conley* and *Arsenault* are distinguishable. Whereas in *Conley*, the administrative law judge limited the claimant "to simple, repetitive tasks with sustained attention of only two hours[,]" *Conley*, 2009 WL 214557, at *3, the administrative law judge in this case placed no restriction on the amount of time during which the plaintiff could sustain attention, *see* Finding 6, Record at 16. And in this case, unlike in *Arsenault*, the administrative law judge did not "adopt" the mental RFC assessment of an expert who had taken into account a moderate restriction in concentration, persistence, or pace. In crafting his mental RFC opinion, the administrative law judge purported to give great weight to the opinions of Drs. Claiborn and Lester. *See* Record at 10, 18, 51-64, 322-38. Yet, Dr. Claiborn gave no testimony as to the plaintiff's mental RFC, *see id.* at 51-64, and Dr. Lester's mental RFC assessment differs in seemingly material ways from that adopted by the administrative law judge. Notably, the administrative law judge did not adopt Dr. Lester's finding that the plaintiff could "be reliable and sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." *Id.* at 338.

8

*of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."). Reversal and remand accordingly are warranted.[5]

### 2.  Failure To Judge Fibromyalgia "Severe" at Step 2

I briefly consider the plaintiff's remaining point of error, that the administrative law judge erred in deeming her fibromyalgia condition non-severe. *See* Statement of Errors at 9-12. As the plaintiff observes, *see id.* at 10, the administrative law judge accepted her diagnosis of fibromyalgia but found it not to impose severe work-related limitations for purposes of Step 2, *see* Record at 13.

Fibromyalgia is "a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features[,]" that is characterized by "'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). *See also Johnson v. Astrue*, No. 08-2486, 2009 WL 2151381, at *1 (1st Cir. July 21, 2009) ("Fibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause. Further, the musculoskeletal and

---

[5] In the context of her first point of error, the plaintiff also contended that the administrative law judge failed to undertake a particularized assessment of her reaction to the demands of work stress, as required by Social Security Ruling 85-15. *See* Statement of Errors at 8-9. This contention is without merit. At oral argument, counsel for the commissioner correctly noted that this court has deemed that requirement satisfied when an administrative law judge assesses the effect of a mental impairment on the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and customary work situations; and deal with changes in a routine work setting. *See Mason v. Astrue*, Civil No. 08-17-B-W, 2008 WL 4822238, at *4 (D. Me. Nov. 4, 2008) (rec. dec., *aff'd* Nov. 25, 2008). That analysis was undertaken in this case. *See* Finding 6, Record at 16.

neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities. The American College of Rheumatology nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites.") (citations and internal punctuation omitted).

Once an administrative law judge accepts a diagnosis of fibromyalgia, he or she has "no choice but to conclude that the claimant suffer[s] from the symptoms usually associated with such condition, unless there [is] substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms." *Id*. at *5 (citation and internal punctuation omitted). "The primary symptom of fibromyalgia, of course, is chronic widespread pain[.]" *Id*.

In this case, some of the administrative law judge's multiple reasons for discounting the severity of the plaintiff's fibromyalgia are indeed invalid, reflecting a misunderstanding of the affliction. These include a lack of objective findings (*e.g.*, a "normal" MRI of the lumbar spine and a physical examination revealing normal gait, range of motion, and strength) and the fact that the plaintiff (who, the administrative law judge omitted to mention, had been prescribed aqua therapy) hoped to enroll in a swimming class. *See* Record at 13, 443; *see also, e.g., Johnson*, 2009 WL 2151381, at *3 (a prescription for physical therapy and/or aerobic exercise, an accepted treatment for fibromyalgia, is not in itself inconsistent with a finding of physical limitations stemming therefrom).

Nonetheless, the administrative law judge also pointed to evidence that, in my view, qualifies as substantial evidence that the plaintiff did not experience chronic, widespread pain as a result of her fibromyalgia condition and that the presence of the impairment had no more than a minimal effect on her ability to work. This includes the presence of only intermittent complaints

of pain from the condition, some indications that the pain was otherwise controlled, and a failure to pursue prescribed treatment, notably physical therapy. *See* Record at 13; *see also, e.g., id*. at 485, 506, 518.[6]

Accordingly, while the administrative law judge erred in his handling of the fibromyalgia condition, his Step 2 determination is sufficiently supported to render the error harmless.

### III. Conclusion

For the foregoing reasons, I **DENY** the Motion To Supplement and recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[6] Pursuant to Social Security Ruling 82-59, a failure to obtain treatment cannot be a basis for refusal to grant benefits unless the claimant has been given notice of the issue and an opportunity to obtain the relevant treatment. *See* Social Security Ruling 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-59"), at 797. However, that ruling applies only when a claimant has been determined to be disabled *but for* failure to seek prescribed treatment expected to restore his or her ability to work. *See id*. at 793. In the context of assessing the credibility of the plaintiff's underlying allegations, an administrative law judge is required only to take into consideration any explanations for failure to seek or follow treatment that were offered by the plaintiff or that otherwise appear of record. *See, e.g*., Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-7p"), at 140 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The plaintiff has pointed to no such explanatory material in this case.

11

Dated this 30th day of December, 2009.

        /s/ John H. Rich III
        John H. Rich III
        United States Magistrate Judge